UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA

In Re: )
) Case No. 18-12426-WHD
David Sandler )
Karen Sandler    Debtors )

## TRUSTEE'S APPLICATION FOR AUTHORITY AND APPROVAL TO EMPLOY RICHARD ASTRELLA, A MEMBER OF STAR REAL ESTATE GROUP, AND APPROVE LISTING AGREEMENT FOR SALE OF REAL PROPERTY

Theo Mann, the Chapter 7 Trustee herein, pursuant to 11 U.S.C. §327, respectfully states:

1. The Applicant is the duly qualified and acting Chapter 7 Trustee of the bankruptcy estate of David Sandler & Karen Sandler.

2. Richard Astrella, a member of Star Real Estate Group, (jointly referred to hereafter as "Local Listing Broker") has the expertise and knowledge to assist the Chapter 7 trustee with the listing and sale of real property located at 7764 MONTGOMERY AVE TOWNSHIP OF CHELTENHAM, PA 19027, legally described as follows:

   **Parcel Number**: 31-00-19330-007
   **Zoning**: R5
   **City/Municipality/Township**: CHELTENHAM TOWNSHIP
   **Census Tract**: 420912024.023003
   **Carrier Route**: C029
   **Abbreviated Description**: DIST:31 CITY/MUNI/TWP:CHELTENHAM TOWNSHIP

   hereinafter referred to as the "Real Property".

3. The Debtors have not declared the Real Property as exempt.

4. The Chapter 7 Trustee desire to employ Local Listing Broker to provide professional services on behalf of this bankruptcy estate for the listing and sale of the Real Property identified hereinabove, in which the above-named Debtors hold an interest. The Local Listing Broker is requesting a commission of two percent (2%) of the gross sale proceeds. All fees and expenses will be presented to the Court for approval prior to payment.

5. Attached hereto as Exhibit "A" is the duly executed and verified statement on behalf of the Local Listing Broker that their employees and members are disinterested persons, as the term is used in the Bankruptcy Code, do not hold an interest adverse to the bankruptcy estate, is not aware of any connection with the Debtors, creditors, any other party in interest, their respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee and understand there is a continuing duty to disclose any such adverse interest.

6. Notice of this Application is being served upon the Office of the United States Trustee, Debtors' counsel, and Debtors.

7. Attached hereto as Exhibit "B" is a copy of the Listing Agreement and the Chapter 7 Trustee requests that the Court approve this Agreement, which the Chapter 7 Trustee has executed on behalf of this bankruptcy estate.

8. BK Global Real Estate Services ("BK Global") has been retained by the Chapter 7 Trustee and BK Global has agreed to fully cooperate with Local Listing Broker, and to be paid the real estate commission agreed to by the Secured Creditor.

9. Mr. Cooper claims a mortgage interest in and to the Real Property known as 7764 MONTGOMERY AVE TOWNSHIP OF CHELTENHAM, PA 19027 and has consented to the sale of the Real Property subject to their security interest.

WHEREFORE, the Trustee prays the Court enter an Order approving and authorizing the employment of Richard Astrella, a member of Star Real Estate Group, to perform professional services on behalf of this bankruptcy estate, for the listing and sale of the Real Property known as 7764 MONTGOMERY AVE TOWNSHIP OF CHELTENHAM, PA 19027, in which the Debtor holds an ownership interest; and for such other and further relief as the Court deems necessary.

DATED: January 22nd, 2019.

       Respectfully Submitted,

       MANN & WOOLDRIDGE, P.C.

            *s/Theo D. Mann*
            Theo D. Mann
            Attorney for Trustee
            State Bar No. 469150

P. O. Box 310
Newnan, GA  30264-0310
(770) 253-2222
tmann@mwklaw.org

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTHERN GEORGIA

In re:                                                    Case No. 18-12426
                                                          Chapter 7
David Sandler
Karen Sandler

_____Debtors_____/

**AFFIDAVIT OF RICHARD ASTRELLA IN SUPPORT OF APPLICATION
TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND STAR REAL
ESTATE GROUP TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO
11 U.S.C. § 327, 328 AND 330**

STATE OF PENNSYLVANIA    )
                         )
COUNTY OF Philadelphia   )

Richard Astrella, being duly sworn, says:

1. I am a real estate agent duly licensed by the State of Pennsylvania.

2. I am an agent of Star Real Estate Group a Pennsylvania Corporation, with corporate offices located at 1500 Walnut Street, Suite 1103 Philadelphia, PA 19102 R("Listing Agent").

3. I am familiar with the Application to Retain Star Real Estate Group, filed by the Trustee ("Application") and the property described therein.

4. I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 7764 MONTGOMERY AVE TOWNSHIP OF CHELTENHAM, PA 19027 (the "Property").

5. Star Real Estate Group has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

6. Neither I nor any member of Star Real Estate Group hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7. To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8. I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Richard Astrella of
Star Real Estate Group

The foregoing instrument was sworn to and subscribed before me this _26_ day of _December_, 20_18_.

NOTARY PUBLIC

_____
Notary Public, State of
Pennsylvania

Commonwealth of Pennsylvania - Notary Seal
MELISSA M. HALFPENNY, Notary Public
Montgomery County
My Commission Expires April 19, 2020
Commission Number 1240684

_Melissa M Halfpenny_
Type, Stamp, or Print Name as
Commissioned

2

LISTING CONTRACT (SELLER AGENCY CONTRACT)  XLS
EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 Broker (Company) **STAR REAL ESTATE GROUP** | Licensee(s) (Name) **RICHARD ASTRELLA**
2
3 Company Address **1500 WALNUT ST, SUITE 1103,** | Direct Phone(s) _____
4 **PHILADELPHIA, PA  19102** | Cell Phone(s) **(267) 241-1246**
5 Company Phone _____ | Fax _____
6 Company Fax _____ | Email **RICH@STARREALESTATEGROUP.NET**

7 SELLER **THEO MANN, BK TRUSTEE FOR THE, ESTATE OF DAVID AND, KAREN SANDLER**
8
9 SELLER'S MAILING ADDRESS _____
10
11 PHONE _____ FAX _____
12 E-MAIL _____

13 Seller understands that this Listing Contract is between Broker and Seller.
14 Does Seller have a listing contract for this Property with another broker?   ☐ Yes ☒ No
15 If yes, explain: _____

16 1. PROPERTY                                                                LISTED PRICE $ _____
17    Address **7764 MONTGOMERY AVENUE**           **ELKINS PARK**      **PA**  ZIP **19027**
18    Municipality (city, borough, township) **CHELTENHAM**
19    County **MONTGOMERY**                         School District **CHELTENHAM**
20    Zoning **R5**
21    Present Use **RESIDENTIAL**
22    Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) _____
23
24 2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")
25    (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed
26        and agreed upon the term of this Contract.
27    (B) Starting Date: This Contract starts when signed by Broker and Seller, unless otherwise stated here: _____
28    (C) Ending Date: This Contract ends at 11:59 PM on _____**6 MONTHS**_____. By law, the term of a listing contract may not
29        exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is au-
30        tomatically 364 days from the Starting Date of this Contract.
31 3. DUAL AGENCY
32    Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
33    Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer
34    and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for
35    a buyer and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that
36    Broker is a Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
37 4. DESIGNATED AGENCY
38    Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the inter-
39    ests of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40    ☐ Designated Agency is not applicable.
41 5. BROKER'S FEE
42    (A) No Association of Realtors® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43        will pay Broker.
44    (B) Broker's Fee is **6.000** % of the sale price OR $ _____, whichever is greater, AND $ _____,
45        paid to Broker by Seller as follows:
46        1. $ _____ of Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, payable
47           to Broker.

48 Broker/Licensee Initials: **RA**         XLS Page 1 of 6         Seller Initials: _____

Pennsylvania Association of Realtors®          COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018
                                                                                    rev. 1/18; rel. 4/18

Star Real Estate Group, Inc., Suite 1103 Philadelphia, PA 19102
Phone: (267)241-1246       Fax: (215) 359-0900       Richard Astrella                                  7764
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

49   2. Seller will pay the balance of Broker's Fee if:
50       a. Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Bro-
51          ker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR
52       b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A
53          willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted
54          by Seller, OR
55       c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
56       d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because
57          of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
58       e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay
59          from any money paid by the government, OR
60       f. A sale occurs after the Ending Date of this Contract IF:
61          (1) The sale occurs within _____ days of the Ending Date, AND
62          (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
63          (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
64   (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest.
65       If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the install-
66       ment contract.
67 6. **BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
68   If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker
69   _____ of/from deposit monies.
70 7. **COOPERATION WITH OTHER BROKERS**
71   Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will
72   pay from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
73   (A) ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
74   (B) ☒ Represents the buyer (BUYER'S AGENT). Broker will pay _____ 2% _____ of/from the sale price.
75       A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
76   (C) ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE).
77       Broker will pay _____ of/from the sale price.
78 8. **DUTIES OF BROKER AND SELLER**
79   (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential
80       buyers. Broker will use reasonable efforts to find a buyer for the Property.
81   (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
82   (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on
83       Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source,
84       will be referred to Broker.
85   (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are
86       oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
87   (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without
88       Broker's written consent.
89 9. **BROKER'S SERVICE TO BUYER**
90   Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: docu-
91   ment preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering in-
92   surance, construction, repair, or inspection services.
93 10. **BROKER NOT RESPONSIBLE FOR DAMAGES**
94   Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal
95   goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).
96 11. **DEPOSIT MONEY**
97   (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the
98       sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller
99       have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may
100      name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement,
101      if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait
102      to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
103  (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
104      determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
105      1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A writ-
106         ten agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

107 Broker/Licensee Initials: __RA__        XLS Page 2 of 6        Seller Initials: _____

108  2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, direct-
109  ing Broker how to distribute some or all of the deposit monies.
110  3. According to the terms of a final order of court.
111  4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
112  deposit monies if there is a dispute between the parties that is not resolved.
113 (C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and
114  costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES
116  Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS
118  Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property,
119  Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by an-
120  other Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO
121  AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
123 (A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or en-
124  vironmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
125  1. is a possible danger to those living on the Property, or
126  2. has a significant, adverse effect on the value of the Property.
127  The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a struc-
128  tural element, system or subsystem is not by itself a material defect.
129 (B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
130 (C) If Seller fails to disclose known material defects and/or environmental hazards:
131  1. Seller will not hold Broker or Licensee(s) responsible in any way;
132  2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
133  3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or
134  settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978
136  The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an
137  EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller
138  knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how
139  the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based
140  paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based
141  paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has
142  or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other
143  dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a
144  different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based
145  paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If
146  the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does
147  not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to hous-
148  ing built in 1978 or later.

## 16. HOME WARRANTIES
150  At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a
151  home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing de-
152  fects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that
153  Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a
154  business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECOVERY FUND
156  Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment)
157  against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund re-
158  pays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the
159  Fund, call (717) 783-3658.

## 18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA
161  Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED,
162  SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL
163  ORIGIN, USE OR hANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONShIP OR AS-
164  SOCIATION TO AN INDIVIDUAL kNOWN TO hAVE A DISABILITY as reasons for refusing to sell, show, or rent properties,
165  loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

166 Broker/Licensee Initials: RA          XLS Page 3 of 6          Seller Initials: _____

19. **TRANSFER OF THIS CONTRACT**
    (A) Seller agrees that Broker may transfer this Contract to another broker when:
        1. Broker stops doing business, OR
        2. Broker forms a new real estate business, OR
        3. Broker joins his business with another.
    (B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements of this Contract with the new broker.

20. **NO OTHER CONTRACTS**
    Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the Ending Date of this Contract.

21. **CONFLICT OF INTEREST**
    It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.

22. **ENTIRE CONTRACT**
    This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part of this Contract.

23. **CHANGES TO THIS CONTRACT**
    All changes to this Contract must be in writing and signed by Broker and Seller.

24. **MARKETING OF PROPERTY**
    (A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____
    _____
        1. ☐ Seller does not want the listed Property to be displayed on the Internet.
           ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
        2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.
    (B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.
    (C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the right to control some elements of how their property is displayed on a VOW and/or IDX websites.
    Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
        ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Seller's listing.
        ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the Seller's listing.
    (D) Multiple Listing Services (MLS)
        ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
        ☒ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons. Listing broker shall communicate to the MLS all of Seller's elections made above.
    (E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
    (F) Other _____

25. **PUBLICATION OF SALE PRICE**
    Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the Property.

26. **COPYRIGHT**
    In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, worldwide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

**Broker/Licensee Initials:** RA       XLS Page 4 of 6       **Seller Initials:** _____

226 **27. FIXTURES AND PERSONAL PROPERTY**
227     (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in the Property, free of liens, and
228         other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas
229         and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door open-
230         ers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrub-
231         bery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall
232         to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, (including rods
233         and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating
234         and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satel-
235         lite dishes and security systems. Also included: _____
236     _____
237     (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treat-
238         ment systems, propane tanks, satellite dishes and security systems): _____
239     _____
240     (C) EXCLUDED fixtures and items: _____
241     _____
242 **28. TAXES & SPECIAL ASSESSMENTS**
243     (A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____
244     _____
245     (B) Yearly Property Taxes $ _____ Property Assessed Value $ _____
246     (C) Is the property preferentially assessed (including a tax abatement)? ☐ Yes ☐ No
247         If applicable, how many years remain? _____
248     (D) COA/HOA Name _____ COA/HOA Phone _____
249         COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
250         Please explain: _____
251     _____
252     (E) Municipality Assessments $ _____
253     (F) COA/HOA Fees $ _____ ☐ Quarterly ☐ Monthly ☐ Yearly
254 **29. TITLE & POSSESSION**
255     (A) Seller will give possession of Property to a buyer at settlement, or on _____
256     (B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
257         ☐ Oil ☐ Gas ☐ Mineral ☐ Other
258         If checked, please explain: _____
259     _____
260     (C) Seller has:
261         ☐ First mortgage with _____ Amount of balance $ _____
262             Address _____
263             Phone _____ Acct. # _____
264         ☐ Second mortgage with _____ Amount of balance $ _____
265             Address _____
266             Phone _____ Acct. # _____
267         ☐ Home Equity line of credit with _____ Amount of balance $ _____
268             Address _____
269             Phone _____ Acct. # _____
270         ☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).
271     (D) Seller has:
272         ☐ Judgments $ _____ ☐ Past Due Municipal Assessment $ _____
273         ☐ Past Due Property Taxes $ _____ ☐ Past Due COA/HOA Fees $ _____
274         ☐ Federal Tax Liens $ _____ ☐ Past Due COA/HOA Assessments $ _____
275         ☐ State Tax Liens $ _____
276         ☐ Other: _____ $ _____
277     (E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylva-
278         nia county, list the county and the Domestic Relations Number or Docket Number: _____
379 **30. BUYER FINANCING** Seller will accept the following arrangements for buyer to pay for the Property:
380     ☒ Cash     ☒ Conventional mortgage     ☐ FHA mortgage     ☐ VA mortgage
381     ☐ Seller's Assist to buyer (if any) $ _____ , or _____ %

382 Broker/Licensee Initials: _RA_         XLS Page 5 of 6         Seller Initials: _____

31. **SPECIAL INSTRUCTIONS**

The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

32. **SPECIAL CLAUSES**

(A) The following are part of this Listing Contract if checked:
- ☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
- ☐ Single Agency Addendum (PAR Form SA)
- ☐ Consumer Services Fee Addendum (PAR Form CSF)
- ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
- ☐ Short Sale Addendum (PAR Form SSL)
- ☐ _____
- ☐ _____

(B) Additional Terms: This Listing Agreement and any sale of the property is subject to and conditioned upon approval by the United States Bankruptcy Court.

_____ / _____ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
_____ / _____ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.
_____ / _____ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

Seller has read the entire Contract before signing. Seller must sign this Contract.

Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

SELLER _____ DATE _____
THEO MANN, BK TRUSTEE FOR THE

SELLER _____ DATE _____
ESTATE OF DAVID AND

SELLER _____ DATE _____
KAREN SANDLER

BROKER (Company Name) STAR REAL ESTATE GROUP _____

ACCEPTED ON BEHALF OF BROKER BY *[signature]* _____ DATE _____
RICHARD ASTRELLA

XLS Page 6 of 6

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, the above and foregoing document was filed electronically using CM/ECF and a true and correct copy of this document was served upon the following:

Charles E. Nye
Deming, Parker, Hoffman,
Campbell & Daly, Llc
4851 Jimmy Carter Blvd.
Norcross, GA  30093

David Sandler
Karen Joan Sandler
13 OAK STREET
MANCHESTER, GA  31816

United States Trustee
362 Richard Russell Building
75 Ted Turner Dr., S.W.
Atlanta, GA  30303

by placing a copy of same in the United States Mail in properly addressed envelopes with adequate postage thereon to insure delivery.


                                        *s/Theo D. Mann*
                                        Theo D. Mann
                                        Attorney for Trustee
                                        State Bar No. 469150

P. O. Box 310
Newnan, GA  30264-0310
(770) 253-2222
tmann@mwklaw.org